AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>Andrew Scott BOGUSLAWSKI<br>*Defendant(s)* | )<br>)<br>) Case No. 2:14-mj-95<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 01/01/2014 in the county of Madison in the Southern District of Ohio, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 26 USC 5861(d): | Possession of Destructive Devices not registered to him in the National Firearms Registration and Transfer Record as required by Title 26 U.S.C. Chapter 53. |

This criminal complaint is based on these facts:
See Attached

☒ Continued on the attached sheet.

_____
Complainant's signature

Timothy P. Burt, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/28/2014

_____
Judge's signature

City and state: Columbus, Ohio

Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

*PROBABLE CAUSE AFFIDAVIT*

**Andrew Scott BOGUSLAWSKI**

I, **Timothy P. Burt**, being duly sworn, depose and state that:

I have been a Special Agent of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives since August 1999. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws pertaining to Explosives Violations.

1. On/or January 2, 2014, at approximately 0430, your affiant was contacted by Captain Steve Saltsman, Columbus Division of Fire (CFD) Bomb Squad concerning Andrew Scott BOGUSLAWSKI.

2. Captain Saltsman stated that on/or about Wedneday, January 1, 2014 at approximately 11:41 p.m., the Ohio State Highway Patrol conducted a traffic stop at westbound I-70 at mile marker 85 for a travelling at a speed in excess of the posted limit (85 miles per hour in a 70 mile per hour zone).

3. The vehicle is further described as a White 2005 Dodge Caravan, Indiana License Plate number UYB644. The above described vehicle was occupied by a lone white male occupant (later identified as Andrew Scott BOGUSLAWSKI).

4. During the course of the traffic stop, the driver (BOGUSLAWSKI) immediately pulled the vehicle to the shoulder of the highway. Upon approaching the passenger side of the vehicle the OSP Trooper observed several weapons (firearms) related Bumper Stickers on the rear of the vehicle, including one that read "If you can read this, you're in range", which placed the OSP Trooper on a heightened state of alert as he (OSP Trooper) approached the vehicle.

5. The OSP Trooper approached the passenger side of BOGUSLAWSKI's vehicle and asked him (BOGUSLAWSKI) why he (BOGUSLAWSKI) was speeding. BOGSULAWSKI explained that he was driving from Pennsylvania to his home in Indiana, claimed he was attempting to get home before the snow storm hit and did not realize he was speeding.

6. The OSP Trooper requested BOGUSLAWSKI's driver's license, registration and proof of insurance, which BOGUSLAWSKI provided. During the course of the traffic stop, the OSP Trooper asked BOGUSLAWSKI if there were any weapons in the vehicle and BOGUSLAWSKI advised "Nope" there were not. The OSP Trooper returned to the OSP Marked Unit to complete paperwork related to the traffic stop.

7. The OPS Trooper returned to speak with BOGUSLAWSKI at the driver's side window and provide him (BOGUSLAWSKI) with his identification and the traffic citation. When the OSP Trooper was at the driver's side window, the OSP Trooper observed what appeared to the the "hand-grip" of a firearm between BOGUSLAWKI's legs (a firearm in a holster attached to the front portion of the driver's seat). The OSP Trooper drew his service weapon, requested back-up and held BOGUSLAWSKI at gunpoint until back-up arrived at the scene. BOGUSLAWSKI advised that the "gun" (firearm) beneath his seat was a plastic training gun. The OSP Trooper advised BOGUSLAWSKI to remain in the vehicle until back-up arrived.

1

8. During the course of awaiting back-up to arrive, the OSP Trooper advised BOGUSLAWSKI of his "Constitutional Rights" (Miranda Warnings). BOGUSKLAWSKI advised that he understood his rights.

9. When additional OSP Units arrived on the scene, BOGIUSLAWSKI was removed from the vehicle and his person was searched. During the course of the search, OSP Troopers recovered several spent .223 caliber catridge casings and several .22 caliber catridge casings from BOGUSLAWSKI's person.

10. BOGUSLAWSKI was placed in custody in the rear of an OSP Marked Unit and OSP Troopers conducted a preliminary search of the passenger compartment of the vehicle (probabale cause search based on the firearm observed in plainview in the vehicle).

11. During the course of the search, OSP Troopers located a loaded Beretta Model 92FS, 9mm pistol, serial number BER280313 next to the driver's seat. The OSP Troopers located several "5 Hour" Energy Drink Bottles with what appeared to be fuses protruding from the caps of the bottles behind the front passenger seat of the vehicle (suspected Improvised Explosive Devices – IED's).

12. The OSP Troopers spoke with BOGUSLAWSKI and asked him if there were any explosives in the vehicle. BOGUSLAWSKI advised that the devices were to be used in "military training excercises". BOGUSLAWSKI advised that he was going to manufacture a "suicide vest" for training. BOGUSLAWSKI advised that none of the items in the vehicle were hazardous and stated that the suspected explosive related powders were "safe and stable".

13. During the course of the traffic stop, BOGUSLAWSKI was again advised of his Constituional Rights (Miranda Warnings) by additional OSP Troopers who responded to the scene. In each instance BOGUSLAWSKI indicated that he understood his rights.

14. Based on the above information OSP Troopers contacted the CFD Bomb Squad and requested assistance at the scene. CFD Bomb Squad Personnel arrived at the scene and conducted a search of the vehicle in order to remove any suspected explosives and make the vehicle safe.

15. Due to weather conditions (heavy snow), ambient light conditions, a large amount of stored possessions in the vehicle and heavy traffic conditions, the vehicle was impounded by OSP Troopers, moved from the shoulder of I-70 and transported to the OSP Post, West Jefferson, Ohio (1485 West Main Street, West Jefferson, Ohio 43162).

16. ATF personnel and Ohio State Fire Marshal (SFM) Ronald Stemen responded to the OSP Post, West Jefferson, 1485 West Main Street, West Jefferson, Ohio 43162, to assit with the investigation. SFM Stemen applied for and obtained a State Search Warrant for the contents of BOGUSLAWSKI's vehicle (relating to explosives, explosives related materials and manufacturing equipment, documents and electronic media).

17. During the course of the search SFM, ATF and CFD Bomb Squad personnel located numerous items relating to Possession, Manufacturing and Interstate Transportation of explosive materials, to include but not limited to suspected Flash Powder, suspected Cannon/Hobby Fuse, and a number of suspected Improvised Explosive Devices (IED's), wires, a remote initiator/trigger, a laptop computer, a Panasonic Digital camera, Flash Cards, SD Cards and a Garmin Nuvi GPS unit.

18. Investigators also located a suspected "remote detonator" manufactured from a green plastic military "medic kit", containing 4 x "D Cell" batteries, a transmitter and a "key fob". In addition investigators located a DPMS (Panther Arms), LR-308, .308 caliber rifle, serial number 39574K, a LAR Manufacturing, Grizzly-15MG, .223 caliber rifle, serial number LX000979 and a Walther, P-22, .22 caliber pistol, serial number L058234,

19. CFD Bomb Squad personnel took several X-Rays of the suspected IED's to determine the contents of the devices. The X-rays indicated that the suspected IED's examined appeared to contain explosive materials.

20. CFD Bomb Squad personnel also opened two (2) of the suspected IED's (5-Hour Energy Drink Bottles – 1 with wires protruding and 1 with cannon/hobby fuse protruding) and determined that the devices contained an explosive mixture (believed to be "flash powder").

21. The explosive related items (suspected explosive powders and samples of suspected Cannon fuse from suspected explosive devices) electronic devices (laptop computer, cameras, flash drive, SD Cards and GPS Unit) were placed in SFM custody.

22. The suspected IED's, bulk quantities of suspected Cannon/Hobby Fuse and other items related to maufacturing explosives, were initially placed in CFD Bomb Squad custody for safe transport and later transferred to the SFM Custody.

23. Between on/or about January 2, 2014 and January 16, 2014, all suspected IED's, and suspected explosives related materials (suspected explosives powders, unknown powders and suspected cannon fuse) were submitted to the SFM Crima Laboratory for analysis.

24. The SFM Crime Laboratory determined that the suspected IED's contained explosive powder, specifically "Flash Powder". SFM Crime Laboratory also determined that the suspected cannon fuse (both bulk material and segments attached to IED's) was "Cannon/Hobby fuse".

25. On/or about January 2, 2014, ATF Special Agent Burt contacted ATF Explosive Enforcement Officer (EEO) Michael Eggleston concerning the suspected IED's recovered during the above described search. S/A Burt stated that he (S/A Burt) believed some of the suspected IED's recovered from BOGUSLAWSKI's vehicle appeared to be possible Destructive Devices. S/A Burt provided photographs and a description of the suspected IED's. S/A Burt also related the results of the tests performed by CFD Bomb Squad Personnel on the suspected IED's.

26. On/or about January 2, 2014, ATF S/A Beth Dallas requested an National Firearms Act (NFA) Records Search from ATF NFA Branch concerning Andrew Scott BOGUSLAWSKI. The NFA Records Search indicated that BOGUSLAWSKI did not have any firearms and/or Destructive Devices registered in the National Firearms Registration and Transfer Record.

27. On/or about January 3, 2014, the Panasonic Digital Camera, Flash Card and SD cards were analyzed by the SFM Crime Laboratory. The contents of the camera, flash card and SD card revealed numerous videos and photographs depicting BOGUSLAWSKI manufacturing and detonating numerous explosive devices. The videos and photographs also depicted BOGUSLAWSKI and other family members and associates detonating numerous explosive devices (including at least one juvenile – BOGUSLAWSKI's 16 year old niece Abby

BOGUSLAWSKI, Ford City PA, is observed detonating numerous explosive devices utilizing a remote control initiating/triggering device).

28. On/or about January 16, 2014, ATF Explosive Enforcement Officer (EEO) Michael Eggleston responded to the SFM Crime Laboratory and examined the suspected IED's. All devices were made safe, photographed, weighed and samples of the suspected explosive powders contained within were collected (SFM Crime Laboratory analysis described above).

29. EEO Eggleston examined all of the IED's and identified nine (9) completed Destructive Devices and four (4) Destructive Devices consisting of component parts. Specifically EEO Eggleston determined -the following:

   a. The device identified as Item 10 consisted of a heavy plastic bottle sealed with the bottle lid and filled with a quantity of explosive powder identified by laboratory analysis as flash powder. An improvised electric detonator had been inserted into a hole in the lid of the bottle as a means of initiation for this device. The device identified as Item 10 was designed to function by explosion. Applying electrical current to the wires on device identified as item 10 would function the improvised detonator igniting the explosive powder and causing the device to explode.

   b. The devices identified as Items 53 - 56 consisted of a heavy plastic bottle sealed with the bottle lid and filled with a quantity of explosive powder identified by laboratory analysis as flash powder. In devices identified as items 53-56 an improvised electric detonator had been inserted into a hole in the lid of the device as a means of initiation. The devices identified as Items 53 - 56 were designed to function by explosion. Applying electrical current to the wires on devices identified as items 53-56 would function the improvised detonator igniting the explosive powder and causing these devices to explode. These explosions would produce blast, thermal effects and propel pieces of plastic at high velocities in all directions. These devices would be capable of causing property damage and personal injuries and/or deaths to persons near the explosion.

   c. The devices identified as items 62 – 64 and 68 consisted of a heavy plastic bottle sealed with the bottle lid and filled with a quantity of explosive powder identified by laboratory analysis as flash powder. In devices identified as items 62-64 and device 68 a length of pyrotechnic fuse had been inserted into a hole in the lid as a means of initiation. The devices identified as items 62 -64 and 68 were designed to function by explosion. Lighting the fuse on devices identified as items 62-64 and 68 would after a short delay ignite the explosive powder causing these devices to explode. These explosions would produce blast, thermal effects and propel pieces of plastic at high velocities in all directions. These devices would be capable of causing property damage and personal injuries and/or deaths to persons near the explosion.

   d. The devices identified as items 58 - 60 and 65 consisted of a heavy plastic bottle sealed with the bottle lid and filled with a quantity of explosive powder identified by laboratory analysis as flash powder. The devices identified as items 58 – 60 and 65 were completed except for the initiation system. In addition, bottles, lids, electric and fuse initiation systems and explosive powder were located to complete a number of additional devices.

    e. EEO Eggleston determined (from video evidence obtained from electronic media in BOGUSLAWSKI's vehicle and witness statements) that BOGUSLAWSKI had utilized explosive devices as weapons and distraction devices in close proximity to military and civilian personnel.

    f. Based upon the above, it is the opinion of EEO Eggleston that the devices in this investigation were designed as improvised explosive weapons, and as such would be properly identified as an explosive bomb. Explosive bombs are explosives as that term is defined in 18 U.S.C. Chapter 40, and are destructive devices as the term is defined in 26 U.S.C., §5845(f).

30. On January 22, 2014, the ATF Federal Explosives Licensing Center provided a Certified Memorandum confirming that there are no records of Andrew Scott BOGUSLAWSKI, applying for and/or possessing any licenses or permits within the United States to engage in business as an explosives importer, manufacturer, dealer or user. This memorandum was certified by the direction of the Attorney General of the United States.

31. On January 22, 2014, the ATF Federal Firearms Licensing Center provided a Certified Memorandum confirming that there are no records of Andrew Scott BOGUSLAWSKI, applying for or possessing any licenses or permits within the United States to engage in business as firearms or ammunition importer, manufacturer, dealer or collector. This memorandum was certified by the direction of the Attorney General of the United States.

32. On January 27, 2014, the ATF National Firearms Act Branch provided a Certified Memorandum confirming that there are no records of Andrew Scott BOGUSLAWSKI any firearms or Destructive Devices are registered or have been acquired by lawful manufacture, importation or transfer to Andrew Scott BOGUSLAWSKI in the National Firearms Registration and Transfer Record, as required by Title 26 U.S.C, Chapter 53. This memorandum was certified by the direction of the Attorney General of the United States.

33. Based on the above information, your affiant believes that probable cause exists that on/or about January 1, 2014, Andrew Scott BOGUSLAWSKI did possess Destructive Devices, as defined in 26 U.S.C., §5845(f), that were not registered to him in the National Firearms Registration and Transfer Record in violation of Title 26 U.S.C. 5861(d).

Timothy P. Burt
Special Agent, ATF


Sworn to and subscribed before me this   28th   day of   February, 2014  , at Columbus, Ohio.

Elizabeth Preston Deavers
U.S. MAGISTRATE JUDGE